IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN and MARY LAVENDER, | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION NUMBER: |
| | ) CV-00-B-2568-NE |
| v. | ) |
| | ) |
| MORGAN COUNTY DEPARTMENT, OF HUMAN RESOURCES and KESHA POINTER, | ) |
| | ) |
| Defendants. | ) |

ENTERED
SEP 2 4 2001

## MEMORANDUM OPINION

Currently before the court is Defendants' Motion to Dismiss, For Judgment on the Pleadings, or in the Alternative, for Full or Partial Summary Judgment filed by the Morgan County Department of Human Resources ("DHR") and Kesha Pointer ("Pointer"), a DHR employee.[1] John and Mary Lavender ("plaintiffs" or "Lavenders"), filed this action alleging that (1) defendants deprived plaintiffs of statutory and constitutional rights granted by 42 U.S.C. § 1983 by denying plaintiffs the opportunity to engage in a foster care relationship, (Amended Compl. at ¶ 17), (2) defendants deprived plaintiffs of the protection afforded them under the Establishment Clause of the First Amendment to the United States Constitution by denying plaintiffs a foster care relationship based solely on plaintiffs' religious affiliation, (Amended Compl. at ¶¶ 25-26), (3) defendants violated plaintiffs substantive due process and equal protection rights under the Fourteenth Amendment to the United States Constitution by depriving

---

[1] DHR and Pointer will collectively be referred to as "defendants" throughout this Memorandum Opinion.

plaintiffs of their right to contract with the State of Alabama in a foster care relationship based solely on plaintiffs' religious affiliation, (Amended Compl. at ¶ 33), and (4) defendants violated Article One of the State of Alabama Constitution by denying plaintiffs the right to enter into a foster care relationship, (Amended Compl. at ¶¶ 39-40). Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion for Summary Judgment is due to be granted.

## I. FACTUAL SUMMARY

Plaintiffs are approved foster parents through an agency called Seraaj Family Homes, Inc. ("Seraaj"). Seraaj is an agency licensed by DHR to place children in foster homes. (DX B.)[2] On January 14, 2000, Pointer visited plaintiff's home. (DX A at 140.) This was a preplacement visit to determine whether plaintiffs could meet the needs of two children who were in custody of DHR. (DX A at 140.) In her report Pointer wrote that she was "concerned about the fact that [plaintiffs] had been informed by the Seraaj worker that the children were coming to stay with them." (DX A at 140.) Pointer also wrote that the purpose of the visit was for her to "get to know the parents," and "[a]t no time was it discussed that this was the family for the girls, as [she] had contacted another agency as well to make preplacement visits with them as well." (DX A at 140.) Plaintiffs did not meet the children during Pointer's preplacement visit. Pointer wrote the following regarding her visit on January 14, 2000, to plaintiff's home:

---

[2] Defendants submitted the Affidavit of Kesha Pointer with attached exhibits. References to this evidence will be cited as "DX" followed by the corresponding exhibit letter.

2

> I do have some reservations concerning the Lavenders. Religion is not an issue when it comes to the family themselves but[3] by the response I received when questions were asked regarding the children and [plaintiffs'] religion, I am concerned. . . . Several questions were asked of [plaintiffs] regarding their religion and the affect it would have on the children. Mrs. Lavender informed me that they do not eat meat, they are vegetarians. . . . I informed Mrs. Lavender that the girls eat meat normally with every meal. She stated that meat could be prepared but not with every meal, I then explained to her that the girls are normally big eaters and meat would probably be expected with each meal. Mrs. Lavender inquired about the girl's religious preference, I informed her that the children are Pentecostal/ Baptist. She in return asked if they took the children to church, did they have to stay with them while church was going on. I tried to explain to Mrs. Lavender that the children have had a lot of problems forming attachments and it would be in their best interest if someone stayed with them as they would be new to the congregation and would probably not be social with any one else at that point. . . . I was also informed that they do no work or play after sun down. When we went to see the room where the girls would be sleeping, I observed that there was no television or radio, which the girls spend a lot time with. Mr. Lavender did state that a TV could be purchased as well as a radio with ear phones for the room but after sundown, they would have to enjoy those things in the privacy of their own rooms. . . . Due to the age of these children and the activities they are currently involved in, I do not feel that this home will meet their needs.
>
>     . . . I informed [Seraaj] of my concerns surrounding [plaintiffs] and the affects those concerns would have on the children, due to their deep religious background and extracurricular involvement. I did tell [Seraaj] that I still wanted to meet the Fortunes.[4] [Seraaj] informed me that [the Fortunes] are Seventh Day Adventist as well. I in return informed [Seraaj] that . . . religion is not the issue here, just if [the foster parents] would be able to meet [the girl's] needs.

(DX A.)

## II. APPLICABLE STANDARDS

Before the court is Defendants' Motion to Dismiss, For Judgment on the Pleadings, or in the Alternative, for Full or Partial Summary Judgment. Defendants have submitted a Memorandum Brief in Support of Defendants' Motion to Dismiss, For Judgment on the

---

[3] Pointer's report actually reads, "[r]eligion is not an issue when it comes to the family themselves but *the* by the response I received . . . ." (DX A.)

[4] The court assumes that the Fortunes are another prospective foster family.

3

Pleadings, or in the Alternative for Full or Partial Summary Judgment ("Defs.' Brief") with attached exhibits. Defendants rely on Pointer's affidavit and two attached exhibits submitted with their brief to support their motion. Plaintiff submitted Corrected Plaintiffs' Opposition to Defendants' Motion to Dismiss and Plaintiffs' G 14 Motion to Amend the Complaint, ("Pls.' Brief").

When "matters outside the pleading are presented to and not excluded by the court, a Rule 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b). It is within the court's discretion to decide whether to consider matters outside of the pleadings that are presented to the court. *Jones v. Automobile Ins. Co. of Hartford, Connecticut*, 917 F.2d 1528, 1531 (11th Cir. 1990). Once the court considers matters outside the complaint, the Rule 12(b)(6) motion to dismiss is converted into a motion for summary judgment. FED. R .CIV. P. 12(b).[5] Because defendants moved to dismiss all counts and presented matters outside the pleadings, the court will treat

---

[5] Before a district court may convert a motion to dismiss into a motion for summary judgment, it must notify the parties and allow the parties ten days to submit any relevant evidence and arguments in support of or in opposition to the merits. *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir.1986), *rev'd on other grounds*, 932 F.2d 1370 (11th Cir. 1991). However, as the panel noted in *Marine Coatings*, this circuit has recognized an exception to the ten days notice requirement when the "parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given. . . . " *Id.* (*citing Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985)). In this case, both parties submitted briefs to the court. It cannot be seriously contested that the parties did not make all available arguments and submit all the evidence they would have submitted had they received notice under Rule 56. *See Property Management & Investments, Inc.*, 752 F.2d at 605 (notice not required where "all of the parties were well aware that the judge was converting this 12(b)(6) motion and . . . made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled").

defendants' motion as a motion for summary judgment.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

A.  **Plaintiffs' Federal Claims**

   1.  *Eleventh Amendment Immunity*

In this action plaintiffs ask the court to enter a permanent injunction enjoining defendants from violating plaintiffs' rights and to award monetary relief in the form of reasonable benefits

5

lost, attorneys' fees, expenses, and costs, as well as compensatory and punitive damages. (Amended Compl. at 8.) Defendants contend that they are immune from suit. (Defs.' Brief at 2.) "Generally, the Eleventh Amendment prohibits actions seeking a monetary award from a state, state agency, or state employee sued in his or her official capacity." *Ross v. State of Alabama*, 893 F. Supp. 1545, 1549 (M.D. Ala. 1995) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). However, a suit may be maintained by an individual if a state has waived its immunity or if congressional legislation under Section Five of the Fourteenth Amendment operates as a waiver of the Eleventh Amendment's protection. *See id.* In this case neither the State of Alabama nor Congress has waived Eleventh Amendment immunity. Thus, the Eleventh Amendment protects DHR from liability if it is determined to be a state agency.

By statute, DHR is a division of the State Department of Human Resources and operates under its direction. ALA. CODE § 38-2-1, 8.[6] Thus, the Eleventh Amendment to the Constitution of the United States and the doctrine of sovereign immunity bar suit against DHR for monetary damages. *See Ross,* 893 F. Supp. at 1550. Therefore, all claims for monetary relief against DHR are due to be dismissed.

The court also finds that plaintiffs may not seek monetary relief from Pointer in her official capacity. The Eleventh Circuit has held that "[l]awsuits against a state official in his or

---

[6] State and county Departments of Human Resources are actually one state governmental unit comprised of state employees. *Williams v. James,* 420 So. 2d 773, 774 (Ala. 1982). Actions under federal statutes cannot be maintained against a defendant who is immune from suit. *Wells v. Hutchinson,* 499 F. Supp. 174 (E.D. Tex. 1980). Actions against state agencies under 42 U.S.C. § 1983 are barred by the Eleventh Amendment. *Woods v. State of Missouri Dep't of Mental Health and Kansas City Regional Diagnostic Center,* 581 F. Supp. 437, 439 (D.C. Mo. 1984) (referencing *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670 (1982); *Alabama v. Pugh,* 438 U.S. 781 (1978)). Plaintiffs have conceded that DHR is an agent of the State. (Defs.' Br. at 3.)

her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1525 (11th Cir. 1990). Because plaintiffs seek monetary relief from a state employee, "the state is considered the real party in interest because an award of damages would be paid by the state." *Ross,* 893 F. Supp. at 1550. Thus, all claims for monetary relief against Pointer in her official capacity are due to be dismissed.[7]

Plaintiffs contend that their claims for a permanent injunction enjoining defendants from continuing to violate their rights, and requiring DHR to place the foster children in their home, are not due to be dismissed on the basis on Eleventh Amendment immunity. (Pls.' Brief at 3-4.) Plaintiffs assert that defendants are not immune from claims for prospective equitable relief based on the doctrine of *Ex Parte Young,* 209 U.S. 123 (1908). (Pls.' Brief at 4.) Under the doctrine of *Ex Parte Young,* the Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *Ex Parte Young,* 209 U.S. at 158-59. *See Florida Assoc. of Rehabilitation Facilities, Inc., v. State of Florida Dep't of Health and Rehabilitative Servs.,* 225 F.3d 1208, 1219 (11th Cir. 2000) (The Eleventh Amendment does not prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief.); *Summit Medical Assocs., P.C. v. Bill Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999), *cert denied,* 120 S. Ct. 1287 (2000)

---

[7] Plaintiffs originally brought suit against DHR for prospective injunctive relief and declaratory relief and against Pointer in her individual capacity under 42 U.S.C. § 1983. (Pls.' Brief at 2.) In their brief plaintiffs cite *Ex parte Young,* 209 U.S. 123 (1908), and assert that it requires that a plaintiff seeking prospective relief from the state sue the state official in his or her official capacity. (Pls.' Brief at 2.) Plaintiffs then moved to amend their complaint to name Pointer only in her official capacity. (Pls.' Brief at 2.) Therefore, the court will not address whether Pointer would be liable for any monetary claim in her individual capacity.

("The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law."); *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1310-11 (M.D. Ala. 2000).

"[T]he *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law." *Summit Medical Assoc., P.C.*, 180 F.3d at 1327. "In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* Additionally, "[i]n accordance with its original rationale, *Young* applies only where the underlying authorization upon which the named official acts is asserted to be illegal." *Papasan v. Allain*, 478 U.S. 265, 277 (1986) (citing *Cory v. White*, 477 U.S. 85 (1982)). Thus, the availability of the *Ex Parte Young* doctrine turns on whether plaintiffs seek retrospective or prospective relief. *See id.* at 1337.

First, plaintiffs ask that the court award them custody of the girls. (Pls.' Brief at 4.) In this instance, plaintiffs are seeking to litigate the propriety of defendants' decision not to place the children with plaintiffs. Awarding plaintiffs custody of the girls would serve to "compensate" plaintiffs for DHR's decision. This is not prospective relief because it involves DHR's past conduct. Thus, it falls outside the *Ex parte Young* doctrine and defendants are entitled to Eleventh Amendment immunity on this claim. Second, plaintiffs seek a permanent injunction enjoining defendants from continuing to violate their rights under federal law and the United States Constitution. This is prospective relief. Therefore, defendants are not entitled to Eleventh Amendment immunity on plaintiffs' claim for a permanent injunction. However, as discussed below, the court is of the opinion that defendants have not violated plaintiffs' rights and, therefore, finds that plaintiffs' request for an injunction is due to be denied.

2.   *Plaintiffs' claims under 42 U.S.C. § 1983*

In order to establish a § 1983 claim plaintiff must show that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) this conduct deprived them of their rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams,* 474 U.S. 327 (1986); *Cornelius v. Town of Highland Lake, Alabama,* 880 F.2d 348, 352 (1989). Plaintiffs allege that defendants deprived them of their statutory and constitutional rights by denying plaintiffs the opportunity to engage in a foster care relationship. (Amended Compl. at ¶ 17; Pls.'s Br. at 6.) Defendants contend that plaintiffs have failed to state a claim under § 1983. (Defs.' Brief 6.)

A § 1983 claim resting on the Fourteenth Amendment must identify a protected life, liberty, or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 571(1972); *Phillips v. Vandygriff,* 711 F.2d 1217, 1221 (5th Cir. 1983). Plaintiffs have not met this burden. By providing plaintiffs with an opportunity to enter into a foster care relationship, defendants have not conferred upon plaintiffs a "liberty" or "property" interest. *See In re: Opinion of the Justices,* 530 A.2d 21, 26 (N.H. 1987) ("There is no possible liberty or property interest in becoming a foster parent or adopting a child, and thus no entitlement thereto."). Thus, plaintiffs have failed to identify a liberty or property interest in entering into a foster parent relationship.

Plaintiffs argue that the liberty interest they assert is not the maintenance of the foster family relationship, "but the basic and fundamental right to contract - without regard to the subject matter of the contract." (Pls.' Brief at 11.) Although, the foster care relationship between the state and foster parents is typically viewed as a contractual relationship, *see, Gibson*

9

*v. Merced Cty. Dep't of Human Resources,* 799 F.2d 582, 586 (9th Cir. 1986); *Mitchell v. Davis,* 598 So. 2d 801, 805 (Ala. 1992), a contract between the state agency and the foster parents does not create a constitutionally protected liberty interest in the maintenance of a foster family relationship, *see Gibson,* 799 F.2d at 587 (citing *Sherrard v. Owens,* 484 F. Supp. 728, 741 (W.D. Mich. 1980; *Drummond v. Fulton Cty Dep't of Family & Childrens Serv's,* 563 F.2d 1200, 1207 (5th Cir. 1977)). Seraaj entered into a contract with DHR. (DX B.) Under this contract, DHR has the "right to review and approve all subcontracts and amendments to subcontracts, if any, which are to be entered into by the contractor for the purpose of carrying out the terms and responsibilities of this contract." (DX B at 5.) Additionally, the contract between DHR and Seraaj contains a clause forbidding discrimination based on religion. (DX B at 5.)

Plaintiffs' claim that DHR interfered with their right to contract is without merit. Plaintiffs cite no statute or case law to support their proposition that DHR interfered with their right to contract. (Pls.' Brief at 11.) The cases plaintiffs do cite merely demonstrate that a foster care relationship is contractual in nature. Specifically, plaintiffs argue that DHR infringed on their right to contract because DHR based its decision on impermissible criteria. (Pls.'s Br. at 11.) However, there is no evidence before the court that DHR based its decision on impermissible criteria; therefore, the court finds that DHR did not infringe on plaintiffs' right to contract. Because plaintiffs have failed to identify a protected life, liberty, or property interest defendant is entitled to judgment as a matter of law on plaintiffs' § 1983 claim based on the Fourteenth Amendment. As discussed below, plaintiffs' First Amendment claim also fails. Therefore, plaintiff has failed to establish the violation of any constitutional right or law of the United States and defendant is entitled to judgment as a matter of law on plaintiffs' § 1983

claims.

Plaintiffs also assert that defendants' action in not placing foster children with plaintiffs, allegedly based on plaintiffs' religious affiliation, demonstrates action by a state agent which inhibits the freedom of Seventh Day Adventists, thus, depriving plaintiffs of the protection afforded them under the Establishment Clause of the First Amendment to the United States Constitution. (Amended Compl. at ¶¶ 25-26.)[8] The First Amendment to the Constitution of the United States of America provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I.

The Establishment Clause provides that a state or the Federal Government cannot set up a church, pass laws which aid one religion, aid all religions, or prefer one religion over another religion. *Everson v. Board of Educ. of Ewing Twp.*, 330 U.S. 1, 15 (1947). In *Lemon v. Kurtzman,* 403 U.S. 602, 612 (1971), the United States Supreme Court stated that "[i]n the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'"

Defendants' decision not to place the children in plaintiffs' home neither advances nor inhibits plaintiffs' religion. Defendants' decision was based upon the best interests and lifestyle of the children. (DX A at 140.) In her notes, Pointer stated that "[r]eligion is not an issue when

---

[8] Although plaintiffs argue that defendants' actions violate the Establishment Clause, defendants address only the Free Exercise Clause in their brief. (Def.'s Brief at 9.) The stronger argument and the one proffered by plaintiffs is that defendants actions violated the Establishment Clause. Nevertheless, the court finds no evidence that defendants have infringed on plaintiffs' ability to observe and practice their religion. Thus, defendants have not inhibited plaintiffs' free exercise of religion.

11

it comes to the family themselves but the response I received when questions were asked regarding the children and [plaintiffs'] religion, I am concerned." (DX A at 140.) Pointer listed several concerns she had regarding the placement of the children in plaintiffs' home. First, Pointer was concerned that plaintiffs are vegetarians while "the girls eat meat normally with every meal." (DX A at 140.) Second, Pointer noted that plaintiffs asked whether it would be necessary that they attend services at a Pentecostal/Baptist church with the girls. (DX A at 140.) Pointer felt that it was in the girls' best interest that they attend church with their foster family. (DX A at 140.) Additionally, plaintiffs informed Pointer that they do not play or work after sun down, (DX A at 140), and that there was no radio or television in the girls' room. (DX A at 140.) Plaintiffs did tell Pointer that a television and radio with ear phones could be purchased for the girls, but that after sun down they would have to use the radio and television in the privacy of their own rooms. (DX A.) Pointer concluded that "[d]ue to the age of these children and the activities they are currently involved in, I do not feel that this home will meet their needs." (DX A.) Defendants' decision not to place the girls in the custody of plaintiffs fails to demonstrate a State preference for religion or for one religion over another. *See Hilley v. Hilley,* 405 So. 2d 708, 711 (Ala. 1981) (The Supreme Court of Alabama has held that in determining the most appropriate custodian of a child, a trial judge may consider the affect parental involvement in religious activities will have upon the welfare and best interest of the child.)[9] The court is of the

---

[9] The Supreme Court of Alabama also stated in *Hilley* that "[v]iewed in the light of the free exercise clauses of the United States Constitution, amend. I, and the Alabama Constitution, art. I, s 3, . . . conditioning the award of custody upon the restriction of the parent's right to free exercise of religion is an impermissible infringement on religious freedom and therefore constitutes an abuse of discretion." *Hilley,* 405 So. 2d at 711. In this case defendants have done nothing to prohibit plaintiffs' practice of religion.

opinion that defendants conduct did not violate the Establishment Clause, and defendants are entitled to judgment as a matter of law on this claim.

B.  **Plaintiffs' State Law Claim**

Plaintiffs contend that defendants violated Article One of the State of Alabama Constitution by denying plaintiffs the right to enter into a foster care relationship. (Amended Compl. at ¶¶ 39-40.) Specifically, plaintiffs argue that "[t]he actions of the defendants in denying plaintiffs the right to enter into a foster care relationship, demonstrates; (i) a preference of religious affiliation in awarding foster care rights; (ii) a religious requirement by the state as a qualification to enter into a public trust, and (iii) a deprivation of plaintiffs' civil rights and privileges based on their religious principles." (Amended Compl. at ¶ 40.)

"Article I, § 14, Alabama Constitution of 1901, provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.' The State and its agencies have absolute immunity from suit in any court under this provision." *Mitchell v. Davis,* 598 So. 2d 801, 806 (Ala. 1992). DHR, as a State Agency, is entitled to this defense, and claims against DHR are barred by the doctrine of sovereign immunity. *See id.* Additionally, "[s]ection 14 prohibits suits against state officers and employees in their official capacity when a result favorable to plaintiff would directly affect a contract or property right of the state." *Id.* However, "[a] state employee is not immune from a suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel performance of a ministerial act, or a suit brought under the Declaratory Judgments Act." *Id.* The court is of the opinion that plaintiffs' claim against Pointer is barred by the doctrine of sovereign immunity.

Article One Section Three of the Constitution of Alabama of 1901 states:

> That no religion shall be established by law; that no preferences shall be given by law to any religious sect, society, denomination, or mode of worship; that no one shall be compelled by law to attend any place of worship; nor to pay any tithes, taxes, or other rate for building or repairing any place of worship, or for maintaining any minister or ministry; that no religious test shall be required as a qualification to any office or public trust under this state; and that the civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles.

Plaintiffs cite no law or authority to support their contention that defendants' conduct violated Article One. Plaintiffs refer to two clauses in Section Three of the Constitution of Alabama of 1901: (1) "that no preferences shall be given by law to any religious sect," and (2) "that no religious test shall be required as a qualification to any office or public trust under this state." (Pls.' Brief at 6.) Thus, the court will address only these two clauses. Plaintiffs have cited to no law giving defendants the power to place children with foster families based on the prospective foster parent's religion or giving defendants the power to prefer foster parents of one religion over another. Considering plaintiffs' religion in addressing the best interests of the children does not rise to the level of being subjected to a religious test to determine plaintiffs' qualifications to enter into a foster parent relationship. "[T]he ultimate consideration in determining the proper custody of the child is what is in his best interests." *Clift v. Clift,* 346 So. 2d 429, 435 (Ala. Civ. App. 1977) (citing *Strickland v. Strickland,* 235 So. 2d 833 (1970)). Therefore, consideration of a prospective custodian's religious convictions and the affect those convictions may have on the child's "best interests" are proper in determining a child's custodian. Thus, the court is of the opinion that defendants' conduct did not violate Section Three of Article One, and defendants are entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

Based upon the foregoing, the court concludes that defendants' decision did not violate any law or constitutional right. Therefore, the court concludes that defendants' Motion for Summary Judgment is due to be granted. All claims against defendants are due to be dismissed with prejudice. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 21st day of September, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge